IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NANCY TRAVER-MUSSELMAN

    Plaintiff,                                  OPINION & ORDER

    v.                                            12-cv-423-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Nancy Traver-Musselman seeks judicial review of a final determination by the Commissioner of Social Security finding that Musselman was not disabled within the meaning of the Social Security Act. Musselman principally contends that remand is warranted because the questions to the vocational expert as framed by the administrative law judge ("ALJ") failed to address her mental limitations regarding concentration, persistence and pace. For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

**FACTS**

**I. Background**

On March 24, 2011, Administrative Law Judge Joan G. Knight issued a decision denying Musselman's application for Supplemental Security Income ("SSI"). (AR 20.)[1] Musselman filed a request for review of the ALJ's decision. On May 8, 2012, the Appeals Council denied Musselman's request, making the ALJ's decision the final determination

---

[1] The citations in this Order are drawn from the Administrative Record ("AR"). (Dkt. #8.)

of the Commissioner. (AR 1.) On June 22, 2012, Musselman filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

## II. Relevant Medical Evidence

Musselman's detailed medical history from 2005 through 2009 is addressed in her brief. (Pl.'s Opening Br. (dkt. #12) 2-4.) As early as 2005, Musselman was assessed with depression with counselling recommended and medication prescribed. Towards the latter half of 2005, Musselman switched medications from Prozac to Wellbutruin. (AR 274-5.) Musselman does not take issue with the ALJ's findings with respect to her alleged physical disabilities.[2] This opinion, therefore, exclusively addresses Musselman's alleged mental limitations and the medical evidence addressing same, particularly information provided by licensed psychologists Gary Ludvigson, Ph.D., and Kyla King, PsyD.

### A. Opinion of Gary Ludvigson, Ph.D

On May 5, 2009, Musselman presented before Dr. Ludvigson for a consultative examination regarding her mental limitations. (AR 345.) Dr. Ludvigson diagnosed Musselman's "level of depression [as] fairly severe . . . noting characterological problems of dependence and avoidance, which would militate against employment." (AR 352-3.) Specifically, he found that Musselman had the following work capacity:

---

[2] *See Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) ("Because Skarbek did not raise these arguments previously, he waived the opportunity to raise them on appeal."); *United States v. Turner*, 203 F.3d 1010, 1019 (7th Cir. 2000) (arguments not raised until reply brief are waived).

> At the present time, she could probably understand, remember, and carry out simple instructions, but likely would have no motivation to do so. She may have some difficulties responding appropriately to supervisors and coworkers because of her general dislike of people. She would have some **trouble maintaining concentration, attention, and work pace.** She would have some difficulty at the present time **withstanding routine work stresses**. She may prefer adapting to changes rather than having a rigid routine.

(AR 345 (emphasis added).)

Dr. Ludvigson recommended that Musselman be "referred to either the local mental health clinic or to Hess Memorial Hospital's mental health clinic for psychotherapy to help alleviate her current depression." (AR 353.) Dr. Ludvigson noted that once her depression had stabilized, referral to the Wisconsin Division of Vocational Rehabilitation would be warranted. (*Id.*)

### B. Opinion of Kyla King, PsyD

On September 16, 2009, Dr. Kyla King, PsyD., a State Agency psychologist, concluded that Musselman had severe impairments relating to anxiety and personality disorders. (AR 408.) More specifically, Dr. King found Musselman had moderate limitations in concentration, attention, and work pace. (AR 418.) She also found that Musselman would have moderate limitations in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods of time, interacting with the general public, accepting instructions and responding appropriately to criticism from supervisors, being able to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and

3

responding appropriately to changes in work settings. (AR 404-405.) Dr. King further noted that notwithstanding Musselman's limitations, she "remains capable of handling the basic demands of unskilled work." (AR 406.)

### III.  ALJ Decision

On March 24, 2011, the ALJ found that Musselman had not engaged in substantial gainful activity since January 31, 2009, the alleged onset date. The ALJ also found the following "severe" impairments: "back pain; possible myofascial inflammation, depressive disorder, and anxiety disorder." (AR 14.)   With regard to the mental listings, the ALJ found *mild* restrictions in the activities of daily living, but *moderate* limitations in social functioning and concentration, persistence or pace. (AR 15.)

> In social functioning, the claimant has moderate difficulties. In her adult function report, the claimant denied difficulties with authority figures or having ever been laid off due to problems getting along with others. However, she reported to Gary Ludvigson, PhD, during his consultative evaluation on May 12, 2009, that she experiences irritability, no longer goes out dancing, and she could no longer stand being around people. At the conclusion of the evaluation, Dr. Ludvigson opined the claimant might have some difficulties responding appropriately to supervisors and coworkers because of her general dislike of people. The undersigned **affords great weight to Dr. Ludvigson's opinion and finds the claimant moderately limited** in this functional area.

(AR 15 (emphasis added).)

Similarly, with regard to concentration, persistence and pace, the ALJ found that Musselman had moderate difficulties, as well as limitations withstanding routine work

4

stresses.  (AR 15.)  The ALJ again relied on Dr. Ludvigson's report with respect to these limitations.

The ALJ nevertheless determined that Musselman had the Residual Functional Capacity ("RFC") to perform "light work, except that she is limited to lifting 50 pounds occasionally and 25 pounds frequently. The claimant is able to sit, stand, or walk six hours in an eight-hour workday, but requires a job that will allow her to sit or stand at will. Additionally, the claimant requires work that is simple, repetitive, and which involves minimal interaction with others." (AR 16.)

At step four, the ALJ determined that Musselman was unable to perform any past relevant work as a housekeeper.  (AR 19.)  At step five, the ALJ relied upon a vocational expert's opinion that given the claimant's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the claimant could perform.  Accordingly, the ALJ found that Musselman was *not* under a disability as defined in the Social Security Act.  (AR  21.)

## OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the

5

evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.; see Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir. 1991)); *see also Richards v. Astrue*, 370 F. App'x. 727, 731 (7th Cir. 2010) ("[A]n ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Smith*, 231 F.3d at 437 (stating that "failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence").

Musselman principally contends that the ALJ erred in omitting her moderate limitations on concentration, persistence and pace ("CPP") from the hypothetical questions posed to the vocational expert ("VE"). Hypothetical questions posed to the VE

6

"ordinarily must include all limitations supported by medical evidence in the record." *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003).

Here, the ALJ asked the VE to consider a limitation that a hypothetical person need only "perform simple, repetitive work tasks." (AR 46.) This language does not, however, include Musselman's CPP limitations. As Musselman's brief points out, this deficiency closely tracks the finding in the Seventh Circuit's decision in *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (stating that "among the limitations the VE must consider are deficiencies of concentration, persistence and pace").

In *O'Connor–Spinner,* the state examiner and the ALJ concluded that the claimant had moderate limitations in CPP because of her depression, but the ALJ asked the VE to consider only a "hypothetical worker [who] was restricted to routine, repetitive tasks with simple instructions." 627 F.3d at 617. On appeal, the Seventh Circuit rejected the Commissioner's argument that the limitation to routine and repetitive tasks "implicitly incorporated" limitations for concentration, persistence and pace because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* at 620. The court of appeals further noted that limiting the hypothetical worker to routine repetitive tasks did not "adequately orient the VE to the totality of a claimant's limitations." *Id.* While some exceptions exist to this general rule, the Seventh Circuit stated that the ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's

7

attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 619-20.

In this case, the Commissioner raises none of the exceptions recognized in *O'Connor–Spinner,* likely because none apply.[3] In any event, having failed to argue an exception, the Commissioner has effectively waived them. Since there *is* substantial medical evidence in the record to support the existence of plaintiff's moderate limitations for CPP, and those limitations were not translated into questions proposed to the VE, the court finds that remand is necessary to determine whether there are jobs available that Musselman could undertake.

Dr. Ludvigson's report addressing Musselman's moderate limitations in CPP underscores the possible importance of these limitations. As discussed earlier, Dr. Ludvigson found that Musselman "would have some trouble maintaining concentration, attention, and work pace [and] withstanding routine work stresses." (AR 345.) Since none of these limitations were put to the vocational expert during the ALJ hearing, and since Dr. Ludvigson's evidence was otherwise afforded great weight, the court has little choice but remand to the ALJ decision for further consideration.

Still, the Commissioner contends that the ALJ *implicitly* incorporated all of the limitations in the medical evidence by confining the question(s) to the VE to a hypothetical person capable of performing only "simple, repetitive work tasks." (AR 49.)

---

[3] The exceptions include: "(1) where the record revealed that the VE had reviewed the claimant's medical records or heard testimony about the limitations; (2) where the ALJ used alternative phrasing and "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform; or (3) where the ALJ's hypothetical question specifically mentioned the underlying condition that caused the difficulties with concentration, persistence, and pace." *See O'Connor–Spinner*, 627 F.3d at 619–20.

The Commissioner would differentiate *O'Connor-Spinner* from the instant case by arguing that the ALJ's questions to the VE are sufficiently accounted for by Dr. King's evidence -- and that Dr. King's evidence supplies the point of distinction with the facts in *O'Connor–Spinner*. In so arguing, however, the Commissioner points to nothing more than a single line in Dr. King's report -- that Musselman's "remains capable of handling the basic demands of unskilled work." (AR 406.) This scintilla of evidence does not effectively explain away the CPP findings in Dr. Ludvigson's report. Far from it.

Even if Dr. King's single statement were read as broadly as the Commissioner suggests, conflicting evidence in the record still exists between Dr. King's findings and Dr. Ludvigson's. The latter expressly found that CPP limitations did exist, including limitations with routine work stresses, while the former seeks to ignore Dr. Ludvigson's evidence or have it explained away. Such inconsistencies hardly supply substantial evidence for the purposes of the ALJ's decision, but to follow the Commissioner's argument through to conclusion (and for the Commissioner to succeed), the court would *then* have to infer that: (1) Dr. King's single conclusory sentence buried in a four page report should be given even greater weight than Dr. Ludvigson's more detailed report regarding CPP findings; and (2) the ALJ reconciled inconsistencies between Dr. King and Dr. Ludvigson's evidence in favor of the former.

Upon review of the ALJ's decision, neither of these inferences seem reasonable. Certainly, there is nothing of substance to support either inference. Nor is there even a single reference to Dr. King's evidence in the ALJ's decision, despite the Commissioner's suggesting as much. Because of this -- and because there is no discussion explaining how

inconsistencies in Dr. King and Dr. Ludvigson's evidence could be reconciled -- the court rejects the Commissioner's argument. *See Huber v. Astrue*, 395 Fed. App'x 299, 302 (7th Cir. 2010); *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006); SSR 96–8p (stating that the ALJ must "explain how material inconsistencies in the evidence in the case record were considered and resolved.")

In the end, the Commissioner's half-hearted argument for distinguishing this case from *O'Connor–Spinner* is telling, particularly given the Seventh Circuit's repeated criticism of the Commissioner for continuing "to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to "simple tasks" despite the Seventh Circuit and its "sister courts continu[ing] to reject the Commissioner's position." *See Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009). Accordingly, the court finds that the Commissioner's rebuttal is nothing more than a post hoc argument that reinforces the need for remand. *See Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010) (finding disfavor with "the Justice Department's lawyers who defend denials of disability benefits [on bases]. . . not relied on by the administrative law judge"); *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010); *Alexander v. Barnhart*, 287 F. Supp.2d 944, 963 n.21 (E.D. Wis. 2003) (noting that in reviewing the ALJ's decision, the district court "cannot consider the post hoc arguments of the Commissioner").

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Nancy Traver-Musselman application

for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 14th day of March, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge